# FALL-SPECIAL TERM.

## CHARLESTON.

### McEndree's Adm'r v. Morgan.

Submitted September 6, 1888.—Decided November 24, 1888.

1. EXECUTORS AND ADMINISTRATORS—ADVANCEMENTS TO HEIRS—OVERPAYMENT—RECOVERY.

   The rule, which refuses to an executor the right to recover back from a legatee an excess of advancement beyond his ratable proportion, which he may have paid him, is not inflexible, even when the deficiency in the assets was not created by the subsequent appearance of debts. But after such voluntary payment under such circumstances the executor will have to make out a very strong case to rebut the almost conclusive presumption, that he had a sufficiency of assets to justify the payment of the legacy, which arises from the mere fact, that he has paid it without taking a refunding bond. It will not be sufficient in such case in order to rebut such presumption for the executor to show, that he acted *bona fide* and with honest intentions; but he must show further, that he acted in paying the legacy with prudence and caution under existing circumstances. (p. 531 *et seq.*)

2. EXECUTORS AND ADMINISTRATORS—STATUTE OF LIMITATIONS.

   A judgment is rendered against an executor to be paid *de bonis testatoris* the 30th of November, 1870. An execution issued on this judgment on December 16, 1870, returnable to March rules, 1871,

and was returned then, "No property found." Another execution issued on the 13th of September, 1880, returnable to December rules, 1880, and ordered "to lie." At July rules, 1881, a bill was filed to compel the executor to settle his executorial accounts, claiming that there were sufficient assets in his hands wherewith to pay this judgment, and which he ought to have applied to its payment, and asking a personal decree against him for the amount of such judgment. This suit was not barred by the statute of limitations and could have been brought without being so barred at any time within ten years after December rules, 1880, the return-day of the last execution on said judgment. (p. 538.)

Statement of the case by GREEN, JUDGE :

In 1855 Jacob Morgan died leaving a will, whereby he devised to his wife one third part of his estate, real and personal, during her natural life, and upon her death the same to be equally divided among all his children. He bequeathed to his daughters Elizabeth B. and Mrs. Anne McEndree, each, the sum of $3,000.00, and to his daughter Ann H. F. Boteler $600.00 in addition to what he had already advanced her. He devised to his sons, William A., Daniel H., and Jaqueline S. and his daughter Mary A. Hall, certain real estate specified in the will; and he made his three daughters, Mrs. McEndree, Mrs. Boteler, and Elizabeth B. Morgan his residuary legatees and his three sons his executors. William A. Morgan on the 18th of May, 1855, qualified as the executor of this will before the Circuit Court of Jefferson county. He made an *ex parte* settlement of his executorial accounts before Lawson Botts, commissioner of the court, who made a report thereof on the 20th of April, 1857, which was approved by the Circuit Court of Jefferson on the 4th day of November, 1858, in order to be recorded, there being no exceptions filed to the report.

John H. McEndree, the husband of Anne E. McEndree, was a merchant; and at his death Jacob Morgan was indebted to him in two accounts for merchandise,—one beginning January, 1851, and running through the years 1851, 1852, 1853, 1854, amounting to $2,511.43, upon which there were credits exceeding $2,000.00, leaving a balance on said accounts of $464.49; also merchant's account for 1855, on which there was a balance of $85.73. These accounts were

settled by William A. Morgan's executor on the 31st of December, 1855, by executing to John H. McEndree two bonds. The following are copies of these two bonds: "$464.49. I bind myself, my heirs, *etc.*, to pay to John H. McEndree or order four hundred and sixty-four dollars and forty nine cents, for value received. Witness my hand and seal this 31st day of December, 1855. W. A. Morgan, Executor of Jacob Morgan, dec'd. [Seal.]" "$85.73. I bind myself, my heirs, *etc.*, to pay to John H. McEndree or order eighty five dollars and seventy three cents. Witness my hand and seal this 31st day of December, 1855. W. A. Morgan, Executor of Jacob Morgan, dec'd. [Seal]."

In the *ex parte* settlement of William A. Morgan's accounts as executor, before Lawson Botts, commissioner, the amount of these two bonds was treated as so much cash paid by the executor to John H. McEndree, the entries in the account being: "Dec. 31st, 1855, cash paid John H. McEndree, $464.49;" and "Dec. 31st, 1855, cash paid John H. McEndree, $85.73." This *ex parte* settlement showed that the executor, William A. Morgan, was indebted to the estate of Jacob Morgan in the sum of $8,016.28¼, of which sum $7,787.81¼ was principal. This account showed that the executor had paid to the legatees various sums of money, and among them to John H. McEndree on December 26, 1855, $2,576.00; and to the widow, Mary G. Morgan on November 14, 1856, $2,687.84.

In 1859 Ann H. F. Boteler brought a suit against William A. Morgan, executor of Jacob Morgan *et al.* in the Circuit Court of Jefferson county, one of the objects of which suit was to ascertain the amount due to each of the said legatees from the executor, William A. Morgan. On the 29th of May, 1860, this cause was referred to Commissioner Cooke, who settled the accounts of Jacob Morgan's executor, William A. Morgan. The commissioner, Cooke, returned the following report on April 20, 1861:

"Pursuant to the annexed decree, I gave notice to the parties, by publication in the Virginia Free Press, published in Charlestown, Jefferson county, for four weeks successively before August 6, 1860, to appear at my office in said town, in order to the execution of said decree. The parties appeared there, and from time to time, in person or by counsel; and I

have settled, and herewith return, stated, the account of Wm. A. Morgan, the executor, with the estate and with the legatees. There was a balance of the estate in the hands of the executor on the 1st of January, 1860, of $8,082.62 principal, and $1,415.08 of interest, which I have distributed among the legatees on following pages. Mrs. Mary G. Morgan, widow, has received from the executor more than her third by the sum of $2,007.15, with interest on $1,882.64 thereof from January 1, 1860. John H. McEndree, deceased, received, in right of his wife, Anne E. McEndree, $318.72 more than her share, which his administratrix is to refund, with interest from January 1, 1860. Augustine I. Smith and Elizabeth B., his wife, are to receive $975.87, with interest from January 1, 1860. Ann H. F. Boteler, the plaintiff, is to receive $199.97, with interest from January 1, 1860. The two last to be paid by the executor. I return interrogatories and answers. Henry Berry, Esq., counsel for plaintiffs, objected to the charges of $15.76 paid Charles Harper for paints, and $112.12 paid to Wm. Bowers for painting, as being barred by limitation. This is a mistake. The paints were bought and the painting done in 1855, and the bills were paid in March, 1857. They were omitted to be charged in former settlement, or rejected for want of proof, and there was none when presented to me. They were returned for proof, and the parties made oath to their correctness after having been paid, and they were allowed. Mr. Berry also objects to Wm. A. Morgan's bill, the first charge in the account. It is allowed on his affidavit. The bills are returned herewith, except Wm. Bower's, which has been mislaid. Edward E. Cooke, Commissioner. *Charlestown, April 9*, 1861."

This report does not appear to have been confirmed by the court. The following is the account returned with said report, of Anne E. McEndree with William A. Morgan, the executor.

"1860.                    CR.

Jan. 1st.—By her portion of the fund ...........                    $2,878 09

1855.                    DR.

Dec. 26th.—To cash paid her husband, John H.

  McEndree........................    $2,576 00

  To interest to January 1, 1860.......   620 81   3,196 81

  "Overpaid by the sum of.........                    $318 72

"Interest from January, 1860, which is to be repaid by the estate of John H. McEndree, deceased."

The following is the account returned with said report of Mary I. Morgan, widow, with William A. Morgan, executor of Jacob Morgan, deceased.

| 1856. | Dr. | 1860. | Cr. |
|---|---|---|---|
| Nov. 14.—To cash paid her.... | $2,687 84 | Jan. 1st.—By her share of the estate, principal....... | $2,694 20 |
| " " interest to Jan. 1, 1860 ............ | 505 30 | With interest.... ..... ...... | 471 69 |
| " 19.—To this sum paid.. . | 30 00 | By balance.................... | 2,007 15 |
| " " int. to Jan. 1, 1860. | 5 64 | | |
| 1857. | | | |
| May 15.—To this sum paid..... | 10 00 | | |
| " " int. to Jan., 1860... | 1 58 | | |
| June 7.—To this sum paid..... | 10 00 | | |
| " " int. to Jan, 1860... | 1 54 | | |
| 1859. | | | |
| Apr. 4.—To this sum paid...... | 1,839 00 | | |
| " " int. to Jan., 1860.. | 82 14 | | |
| | $5,173 04 | | $5,173 04 |

1860, Jan. 1.—To balance, $2,007.15, of which $1,882.64 is principal.

The two bonds executed by William A. Morgan, executor of Jacob Morgan, deceased, to John H. McEndree dated December 31, 1855, not being paid were sued upon; and on November 30, 1870, in the Circuit Court of Jefferson the following judgment was recovered on them by Anne E. McEndree, administratrix of her husband, John H. McEndree: "This day came the parties by their attorneys, and the defendants having withdrawn the plea of fully administered, and the other pleas filed in this cause, and the defendant being solemnly called, and came not, it is therefore considered by the court that the plaintiff recover of the defendant, Wm. A. Morgan, as the ex'r of Jacob Morgan, to be levied of the goods and chattels of his testator in his hands to be administered, the sum of $1,050.25, with interest from this day, and also her costs ($15.98) expended in the prosecution of her suit, to be levied in like manner on the assets of the testator in his hands to be administered." Upon this judgment an execution was issued, and was returned, "No money or property found in the hands of Wm. A. Morgan, as executor of Jacob Morgan, dec'd, to satisfy the within execution." This return was made March 6, 1871. Another execution was issued on this judgment September 13, 1880, returnable to December rules, indorsed, "A renewed execution," and " To lie."

John H. McEndree died June 20, 1860 ; and John S. Moore, sheriff of Jefferson county, having become his administrator *de bonis non* in 1861 filed his bill against William A. Morgan

in his own right and as executor of Jacob Morgan, deceased, on behalf of himself and all of the creditors of Jacob Morgan, deceased, in the Circuit Court of Jefferson county to enforce a payment of the said judgment in favor of the administratrix of John H. McEndree, which, the bill claims, was wholly unpaid, also alleges, " that upon a proper statement and settlement of the account of said W. A. Morgan as executor of said Jacob Morgan, deceased, there will be found in his hands, and for which he is accountable, personal assets applicable to the payment of the debts of said decedent amply sufficient to pay and satisfy said judgment." It also makes this allegation : " Your orator further represents that, in addition to the personal assets above referred to, he is informed and believes that said Wm. A. Morgan, executor as aforesaid, transferred to M. I. Morgan, the widow of said Jacob Morgan, deceased, to be held during her natural life, $1,839.00 shares, or shares of the value of $1,839.00, of fire insurance and Little River stock; that, the widow being dead, that stock consequently now reverts as a part of the personal estate of said Jacob Morgan, deceased; and your orator is informed and avers that the proceeds of said stocks, or a large portion of the same, reduced to the form of money, is in the hands of the agents and officers of associations in the city of Alexandria, Va., ready to be paid over, if not already paid, to said W. A. Morgan, executor as aforesaid."

To this bill William A. Morgan filed an answer and an amended answer, in which he admits, that the judgment sued on has never been paid, and claims, that it ought not to be paid, as John H. McEndree is indebted beyond the amount of this judgment to him as the executor of Jacob Morgan; and, to sustain this position, he alleges, that the two bonds, on which said judgment was rendered, were executed by him as the executor of Jacob Morgan for two mercantile accounts due from Jacob Morgan to John H. McEndree; that these bonds, copies of which have been given above, were dated December 31, 1855, and only five days before they were executed; that John H. McEndree, at the sale of the personal estate of Jacob Morgan, deceased, had purchased slaves to the amount of $2,576.00, which had not been paid, and which said McEndree wished to have credited on the $3,000.00

legacy in Jacob Morgan's will to John H. McEndree; but that he (William A. Morgan) was then of opinion, that this sum was more than would be coming to John H. McEndree's wife on her said legacy of $3,000.00, and would be sufficient to pay not only her ratable portion of said legacy but also the full amount due to John H. McEndree on his said two mercantile accounts against Jacob A. Morgan, deceased. The answer alleges that under these circumstances, acting on the advice of John H. McEndree, his brother-in-law, who was an experienced business man, he (William A. Morgan,) being a young and inexperienced man, agreed that this $2,576.00 might be regarded for the time being as credit on this $3,000.00 legacy to John H. McEdree's wife, and this respondent would execute his bonds, as executor, for the two mercantile accounts due to John H. McEndree by Jacob Morgan ; which he did in order to prevent their being barred by the statute of limitations; and the understanding was, that these bonds were to be paid out of the estate of Jacob Morgan, if it was sufficient to pay its debts and justify a dividend of $2,576.00 on this $3,000.00 legacy, and otherwise they were not to be paid; and it is insisted, that in point of fact the $2,576.00 was more than sufficient to pay the ratable portion of this $3,000.00 legacy to Mrs. McEndree and the full amount of said bonds; so that in fact John H. McEndree is indebted to him, William A. Morgan, the executor of Jacob Morgan. He says he did not defend the suit brought on these bonds given by him as executor on December 31, 1855, by the administrator of John H. McEndree, partly because he had no assets in his hands or to come into his hands, out of which a judgment on these bonds could be satisfied, and partly because his defence, he was advised, could more properly be made in a court of equity. The only evidence taken in the cause shows the circumstances under which these two bonds to John H. McEndree, were executed by William A. Morgan, and what is material in his statements is set out in the opinion in this cause. He also alleges, that, even if there should be a decree on said judgment, the respondent would be entitled to a decree against said McEndree's estate for the excess paid by him on said $3,000.00 legacy beyond the ratable amount probably payable on it.

. He files as an exhibit with this answer the *ex parte* settlement of Commissioner Botts before referred to and the settlement of Commissioner Cooke in the suit of Ann H. F. Boteler against him and others. Further answering he says : " As to the allegations of the bill, that certain stock or money was by him transferred to the widow of Jacob Morgan to be held by her for her natural life, and at her death to revert to the estate of Jacob Morgan, it is true, that under the will of the testator the widow was legatee of one third of the personalty of Jacob Morgan for her life, and at her death he bequeathed the same in equal shares to all his children ; that said third of the personal assets were duly paid and delivered to her by respondent ; that she is now long since dead, and respondent is advised, that he has no further concern with said legacy after paying the same to the widow according to the directions of the will of his testator ; and that the same does not revert to the estate of Jacob Morgan, but passed on the death of the life-legatee to her personal representative in trust for the legatees of Jacob Morgan."

Respondent admits, that he has received a portion of said legacy not as executor of Jacob Morgan but as agent of said legatee, and says that he promptly paid over to Ann E. McEndree, widow and administratrix of John H. McEndree, the sum of $250.00, which was more than her ratable portion of said legacy so far as collected.   In the amended answer he sets out that in this settlement of Commissioner Cooke there was an error against him of $1,870.00 with interest from November 4, 1858, which was admitted in an agreement authorizing the correction of the same, signed by Ann E. McEndree and others interested, and dated January 3, 1874.

These answers were replied to generally, and on December 20, 1884, the court entered a decree, whereby this suit was revived in the name J. G. Hurst, administrator *de bonis non* of John McEndree ; and the court having read the record and papers in the two ended chancery cases referred to in the proceedings in the cause, styled *Ann E. McEndree* v. *Jacob Morgan's Executor and others* and *Ann H. F. Boteler* v. *Jacob Morgan's Executor and others*, ordered, that this cause be referred to Cleon Moore, commissioner, who is directed to convene the creditors of the estate of Jacob Mor-

gan, deceased, and report all the debts against said estate remaining unpaid and the assets, if any, in the hands of the defendant and liable to be applied to the payment of said debts of Jacob Morgan, deceased, and that he ascertain and report the consideration, for which the plaintiff's judgment named in the bill was rendered, and whether the defendant should be required to pay said judgment.

The commissioner reported, that the only claim against the estate of Jacob Morgan remaining unsatisfied was the judgment in favor of the plaintiff named in the bill for $1,050.28 with interest from November 30, 1870, and $16.73 costs, and that the consideration for it was the two bonds before received of William A. Morgan, executor of Jacob Morgan, dated December 31, 1855. The commissioner reported further, that said William A. Morgan's attorney introduced as evidence the payment of $2,566.00 on December 26, 1855, to John H. McEndree, the same being for slaves purchased by said McEndree at the sale of the personal property of Jacob Morgan, deceased; and he claimed, that John H. McEndree's said judgment or rather his store-accounts, on which it was based, was not only thereby paid off, but that he owed the estate $873.00 as of January 1st, and that the true state of accounts between them was as follows:

| | | |
|---|---:|---:|
| Amount in the hands of W. A. Morgan, executor, January 1, 1874, per commissioner's report | $11,028 | 30 |
| To the widow, under said Morgan's will, ⅓ | 3,676 | 10 |
| Leaving for distribution among the distributees.... | $7,352 | 20 |
| John H. McEndree, in right of wife, entitled to 5-11..... | $3,341 | 90 |
| Principal and interest paid McEndree by Morgan, (see report of April, 1874,) | 5,358 | 25 |
| Leaving due from McEndree to Morgan on account of overpayment | 2,016 | 35 |
| Deduct store-account..... ..... ..............  $550  22 | | |
| Interest from December 31, 1855, to January 1, 1874 ......  .  .... ... ... ...............  594  23 | | |
| | 1,144 | 45 |
| | $871 | 90 |

"This," the commissioner says, "with the deposition of Geo. W. Hall, herewith returned, is the only evidence intro-

67

duced to sustain the claim of payment of this judgment, and your commissioner submits that it does not prove the payment of this judgment. If said executor was required to pay said judgment, he would not be entitled to credit therefor, as the same has been credited to him on his account, as executor, of date December 31, 1855." The commissioner also states that the defendant pleaded the statute of limitations to these store-accounts and to this judgment; and he states what executions were issued on this judgment and the returns made on them. They are stated in the opinion of this Court in this cause.

This report was excepted to by William A. Morgan, executor of Jacob Morgan, because the evidence shows, that the debt of John H. McEndree against Jacob Morgan's estate has been fully paid, and because said debt and judgment are barred by the statute of limitations.

This cause was finally heard on June 20, 1887, when by its decree of that date the court overruled these two exceptions, and " hereby approves and confirms said report not including however, the alternative statement made therein by request of defendant's counsel; and, it appearing from said report and the evidence submitted, that the debt and judgment set out in complainant's bill still remains unpaid and unsatisfied, and that more than sufficient assets applicable to the payment thereof have come into the hands of said Wm. A. Morgan as such executor, it is adjudged, ordered and decreed, that said J. Garland Hurst, administrator de bonis non of John H. McEndree, deceased, do recover of said Wm. A. Morgan the sum of two thousand one hundred and nine and 13-100 dollars ($2,109.13) that being the amount of said judgment, $1,050.25, with interest from November 30, 1870, to this date and $15.98 costs of said judgment,—with interest on said $2,109.13, at six per cent per annum from this date until paid and the costs by the plaintiff in his behalf in this cause expended. But this decree is suspended for ninety days, to allow defendant, Wm. A. Morgan, to perfect his appeal from the same by executing bond with security in the penalty of $200.00 conditioned according to law before the clerk of this court."

From this decree of June 20, 1887, William A. Morgan has obtained an appeal and *supersedeas.*

*G. Baylor* for appellants.

*G. M. Beltzhoover* for appellee.

GREEN, JUDGE:

The most important question involved in this case is: Has an executor under any circumstances a right to recover back from a legatee an excess of advancements, which may have been made to him on a pecuniary legacy above his ratable proportion of his legacy, and, if so, under what circumstances? In England, it seems to be settled by the authorities, a legatee is not bound to refund at the suit of the executor, unless the payment by him was compulsory, or unless the deficiency was created by debts, which did not appear until after the payment of the legacy, in either of which cases the executor might compel the legatee to refund the excess paid on the legacy. See Toll. Ex'rs 341; 2 Fonbl. Eq. 376; *Coppin* v. *Coppin,* 2 P. Wms. 296; *Orr* v. *Kaines,* 2 Ves. Sr. 194. But the general spirit of the decisions in Virginia and West Virginia has relaxed much of the severity of the ancient English cases, when no fraud or misconduct is imputed to the executor. See *Jones' Ex'r* v. *Williams,* 2 Call 103, top p. 86; and *Burnley* v. *Lambert,* 1 Wash. (Va.) 312; *Gallegoe's Ex'rs* v. *Lambert,* (Tucker's opinion,) 3 Leigh 465.

I am therefore of the opinion that there is no inflexible rule, which refuses to an executor under any circumstances the right to recover back from a legatee an excess of advancements, which may have been made to him even when the deficiency was created by debts, which appeared before the payment of the legacy, and the payment was voluntary; but in such case the executor will have to make a very strong case to rebut the almost conclusive presumption, that he had a sufficiency of assets to justify the payment of the legacy, which arises from the mere fact, that he has paid the legacy. As an instance, where the law would permit an executor to recover, I may put the case, where the assets were apparently abundant, when the legacy was paid, but were subse-

quently rendered deficient by a general and destructive fire. See *Miller* v. *Rice*, 1 Rand. (Va.) 438.

The general rule is, as laid down in English cases quoted above, and, to justify a departure from this general rule, the executor must show, that in the execution of the will he has done everything, which a prudent man ought to have done, and has done nothing, that a cautious man ought not to have done ; and it will not suffice to show, that he has been guilty of no fraud but has acted *bona fide* and with honest intentions. That the English rule has not been relaxed in Virginia or West Virginia beyond what is above stated, abundantly appears from the cases of *Davis* v. *Newman*, 2 Rob. (Va.) 664; *Nelson's Ex'r* v. *Page*, 7 Grat. 160; *Anderson* v. *Piercy*, 20 W. Va. 282; and *Shriver* v. *Garrison*, 30 W. Va. 456, (4 S. E. Rep. 660).

We will now apply this law to the facts appearing in this case. The appellants claim, that William A. Morgan, the executor of Jacob Morgan, paid on the legacy to Mrs. Anne E. McEndree more than her ratable proportion ; and that in this suit the executor has a right in effect to recover it back by offsetting it against the debt of her husband, John H. McEndree. The deficiency in this case was credited by debts due from the testator, of which the executor had full knowledge, the last payment having been made on this legacy of $250.00 on May 8, 1868, which was thirteen years after the qualification of William A. Morgan as executor and many years after every debt of Jacob Morgan, so far as the record shows, has been presented to the executor for payment and settled. It is therefore obvious, that under the English rule the executor would have no right to recover of the legatee any excess of payment, which he may have made on this legacy.

Is there anything, which would justify us in holding, that under the more liberal rule in this State and Virginia the executor, William A. Morgan, ought to be allowed to recover back any such excess of payment, as he may have made on this legacy to Mrs. Ann E. McEndree ? It seems to me, there is not. It is true, in making the payments on this legacy he seems to have acted *bona fide* and with good intention but with great imprudence and want of proper caution. In exe-

cuting bonds to John H. McEndree, on the 31st of December, 1855, for the amount of the indebtedness of his intestate to John H. McEndree he paid and satisfied that indebtedness, and he thereby made himself personally responsible for the amount of said two bonds. It is true, he added to his signature, William A. Morgan, this description of himself: "Ex'r of Jacob Morgan, dec'd;" but as these bonds did not bind him to pay these amounts named in them as the executor of Jacob Morgan but individually, the addition he made to his signature must be regarded as a mere *discriptio personæ*, and when these bonds were sued on, the judgment, which was rendered on them, ought to have been a personal judgment against him to be paid out of his own assets and not, as it was, a judgment to be paid out of the assets of his testator in his hands to be administered. That he regarded this as a payment of the indebtedness of the estate of John H. McEndree was clearly shown by all the settlements, which he had made of that estate; for in them he claims, that he paid John H. McEndree on December 31, 1855, these two sums, $464.49 and $85.75, the exact amounts of these two bonds. Five days before that John H. McEndree had purchased property at the public sale made by this executor of the negroes and other personal property of Jacob Morgan, deceased, to the amount of $2,576.00. This amount John H. McEndree wished to settle by treating it as a payment to his wife on her legacy of $3,000.00, and that the debt due to him from the testator should be settled by William A. Morgan, executor, giving him his bonds therefor. William A. Morgan objected to this at first but finally assented thereto. William A. Morgan as executor had clearly the right to insist upon the applying of a portion of John H. McEndree's purchases to the payment of the debts due from the estate to John H. McEndree, and to refuse to allow the whole of his purchases to be applied as a payment on the legacy; or, if he assented thereto, he had a right to require under the laws of Virginia a refunding bond, requiring Mrs. McEndree to refund her due proportion of any debts or demands against the testator and also the costs attending the recovery of such a debt, (see Code Va. 1849;) but, having waived this right at that time he can not now claim it.

He endeavors in his answer to excuse himself for want of prudence in this matter by making these statements: "Respondent flatly refused to give either note or bond, on the ground that said McEndree was himself indebted to the estate of Jacob Morgan in the said sum of $2,576.00 by his purchase of the slaves above mentioned, but offered to credit on said purchase the amount of the two claims thus presented. Inasmuch, however, as said McEndree was under the will of Jacob Morgan entitled, in right of his wife, to a legacy of $3,000.00, and as respondent had not proceeded far enough in administering the estate of his testator to ascertain how much of said legacy could be paid out of the assets thereof, said McEndree insisted that, for the time at least and until the estate of Jacob Morgan was further administered and its exact amount disclosed, he should be permitted to treat the said $2,576.00 as a distribution upon the aforesaid legacy, and that respondent should give him his bonds as executor for the two claims he presented as a creditor of the estate, in order to keep the statute of limitations from running against them, and to keep them in force for a final settlement between the executor of Jacob Morgan and said McEndree as legatee and creditor. And respondent here expressly says, that he then executed and delivered said two bonds with this distinct understanding and for no other purpose whatever; that he so executed them at the earnest request and advice of said McEndree, to be paid, if the estate of Jacob Morgan was sufficient to pay its debts and justify the dividend upon his legacy already made to said McEndree, but to be abated in a final settlement, if said dividend should prove to be more than the condition of the estate permitted, to the amount of such excess."

Respondent attempted to sustain these statements only by the deposition of George W. Hall taken October 20, 1885, who deposes as follows: "I was present at the store, and heard the conversation between them in regard to the settlement of the estate of Jacob Morgan. Mr. McEndree claimed a settlement of the store account, and Mr. Morgan told him that he had not settled for the property, negroes, and other property he had bought at the sale, amounting to some two or three thousand dollars; don't recollect the exact amount.

Mr. Morgan stated that, so far as the estate was settled, he had more in his hands than was sufficient to pay his store account and his wife's portion of the legacy. Mr. McEndree then urged Mr. Morgan to give him a note for the store account, which Morgan declined at first; but McEndree importuned him very much, and appealed to him as his brother-in-law; that he had no idea of taking advantage of him at all, as he was young and inexperienced; that he wanted it as a sort of memorandum; that he would not think of claiming it unless the estate held out to pay the legacies. I said to Col. Morgan I would not think of paying anything on the legacy until the store account was paid, as debts were to be paid before legacies. It was, when I said this, that McEndree made this appeal to him as a brother-in-law. Col. Morgan proceeded, under protest, to give this note, and at McEndree's earnest solicitation. McEndree assured him that no advantage would be taken of this note if the legacy did not pay out." Upon cross-examination this witness stated that the bonds of William A. Morgan to John H. McEndree, he thought, were executed before the time of the above conversation in his presence.

The answer of William A. Morgan further claims as follows: " And respondent further says that he reluctantly, and only after great persuasion and entreaty, conceded to this arrangement, and after the repeated assurance of McEndree that it was necessary to keep said claims from being barred by the statute of limitations, and was for no other purpose, and that he would hold said bonds for no other purpose whatever, and only until a final settlement of the estate could be made. Respondent in this entire transaction, now so fully detailed, was guided by the counsel and suggestion of said John H. McEndree, who was his brother-in-law, a man of large business experience, especially in matters pertaining to the administration of estates, and was to a considerable extent, by reason of such relationship and experience, the counsellor and confidential adviser of respondent, then a very young man and unversed in business, in his actings as executor."

These allegations are an effort to set aside and treat as null these transactions between the executor and John H.

McEndree, on the ground that John H. McEndree occupied toward his brother-in-law, William A. Morgan, the position of counsellor and confidential adviser and fraudulently misled and deceived him. The evidence totally fails to establish this position. William A. Morgan was of course more than twenty one years of age. His father regarded him as a man of good business capacity, or he would not have appointed him one of his executors. In the transaction stated above it is obvious, that William A. Morgan and John H. McEndree occupied opposing positions, and it was impossible to suppose, that William A. Morgan was controlled by the advice of John H. McEndree.

William A. Morgan at that time seems to have understood the transaction differently from what the witness Hall in his deposition seems to have considered it; and the conduct of William A. Morgan is entitled to much more weight than the statement of a single witness of the substance of a conversation, made some thirty years after the conversation was held. William A. Morgan regarded the execution of his bonds to McEndree as an absolute payment of the debt due from his intestate to McEndree, for he so claimed it in his settlements of his executorial accounts; and he also regarded the purchases of McEndree, amounting to $2,576.00, as a payment on the $3,000.00 legacy to McEndree's wife. That these were the views of William A. Morgan appears from Commissioner Cooke's report, returned as long ago as April 20, 1861, exhibiting the transaction between him and John H. McEndree, as understood by the parties, accurately. They can not at this late date be set aside by the deposition of one single witness in reference to a conversation thirty years ago. That William A. Morgan continued to regard these transactions as represented in his settlements is shown by the fact, that as late as May 8, 1863, he paid John H. McEndree $250.00 more, due to his wife on her legacy; which shows, that at that late date he was satisfied, that he had not over paid the legacy of Mrs. McEndree.

It would indeed require strong evidence to prove, that the executor, William A. Morgan, trusted implicitly to the creditor, John H. McEndree, in making the settlement of December 31, 1855, when he gave his bonds for the debt his

testator owed to McEndree, and when the amount, which McEndree owed the executor for slaves of the estate bought by him, it was agreed, should be credited on the legacy, which had been left McEndree's wife; and that the executor, William A. Morgan, only agreed to this with an understanding, that these bonds should never be paid, if it should ultimately turn out, that by this settlement more would be paid on the legacy to McEndree's wife than her ratable portion. The parties to this settlement had antagonistic interests, and neither one of them can claim, that he put implicit confidence in the other, and that his confidence was abused; for from their respective attitudes towards each other neither had a right to put such special confidence in his opponent.

Of course his claim to disregard this settlement with McEndree, made more than thirty years before, and which he as executor had carried out by obtaining on his settlement credit not only for the payment of this debt but also for payment on the legacy to McEndree's wife of the full amount of purchase at the sale of the testator's property by the executor, can not be allowed. But even on the evidence, which has been produced after the lapse of thirty years, it is really by no means certain, that, when this $2,576.00 was credited on Mrs. McEndree's legacy of $3,000.00, McEndree really received more than the ratable proportion, which was due to his wife on this legacy.

The claim on the part of the counsel of William A. Morgan, that McEndree was entitled to receive but five elevenths of his legacy of $3,000.00, was, as shown by Commissioner Cooke's settlement, based on the distribution of but two thirds of the estate, there being excluded from this distribution the one third of the personal estate bequeathed to the widow for life. Upon her death McEndree would have been entitled to his ratable share of this one third of the estate, that is to say, to one half of the amount, to which he was entitled upon the first distribution, that is to say, to five twenty seconds of his $3,000.00 legacy, that is to say, $681.80,—whereas there was paid him then but $250.00. If the difference, $431.80, exceeds the supposed over-payment as set out in Commissioner Cooke's report, which was $318.72, it would seem, that, when John H. McEndree receives the amount

decreed in his favor by the final decree in this cause, he will not have received more, than he was justly entitled to under the will of Jacob Morgan. But it is now claimed, that he has no right to require this to be paid by William A. Morgan, because this one third of his personal estate had been by him transferred to the widow in the shape of certain stock and money, to be held by her for her natural life, and on her death to revert to the estate of Jacob Morgan; and though William A. Morgan was still the executor of Jacob Morgan at the death of his widow and certainly received a portion of the proceeds of this stock after her death yet he claims in his answer, he is not responsible to the plaintiff as a legatee for any portion so received, as he must be regarded as having received it not as executor but as agent of John H. McEndree and the other legatees; that, after he paid over said stock to the widow, he as executor had no further concern with it, but on her death it went to her personal representative in trust for the legatees of Jacob Morgan including said John H. McEndree's wife.

As I understand the law, William A. Morgan as executor of Jacob Morgan ought to have paid the dividends on these stocks and the interest on these moneys, making together one third of the personal estate of Jacob Morgan, to his widow during her life and at her death accounted for the stock itself and the principal of the money as executor of Jacob Morgan. Had he done this, the controversy, which has ensued with the personal representative of John H. McEndree, as shown in this cause, never could have arisen, as William A. Morgan would not have sustained any damages, such as he has now sustained. This damage is therefore the result of gross negligence and want of proper precaution on his part and not the result of having paid to John H. McEndree more than he was entitled to.

The only other question in this cause is: Is the claim of John H. McEndree barred by the statute of limitations? The suit is on a judgment improperly rendered against William A. Morgan as personal representative, it having been given on two bonds of his signed by him individually. This judgment was rendered by the Circuit Court of Jefferson county on November 30, 1870, and no writ of error has been

asked to reverse it by either party, and it is now too late to review it in any manner. It must therefore be regarded as correct.

An execution issued on this judgment on December 16, 1870, returnable to March rules, 1871, was then returned, "No property found in the hands of William A. Morgan, executor, to satisfy the within execution. *March* 6, 1871." This kept the judgment alive till March 6, 1881, or for 10 years under our statute. See Code W. Va., ch. 139, § 10, p. 665. Another execution could issue on this judgment within ten years, that is, at any time prior to March, 1881. One was legally and properly issued on September 13, 1880, returnable to December rules, 1880, and under said statute, and the decisions of this Court, (see *Werdenbaugh* v. *Reid*, 20 W. Va. 588, and *Shipley* v. *Pew*, 23 W. Va. 487,) this suit to enforce this judgment would not be barred until 10 years after the returning of this last execution, that is, in December, 1890. This bill in this cause was filed at July rules, 1881, or within less than a year after the returning of the last execution; and therefore this suit was not barred or affected by the statute of limitations.

There was therefore no error in the decrees of December 20, 1884, referring this cause to a commissioner to settle the executorial accounts of William A. Morgan, executor of Jacob Morgan, nor in the decree of June 20, 1887, confirming the commissioner's report and decreeing that J. Garland Hurst, administrator *de bonis non* of John H. McEndree, deceased, should recover of said William A. Morgan the sum of $2,109.13, the amount of said judgment with interest and costs, with interest on the same from the date of said decree, June 20, 1887, till paid and his costs. The said decrees of December 20, 1884, and of June 20, 1887, must therefore be affirmed, and appellees must recover of the appellant their costs in this Court expended and damages according to law.

AFFIRMED.