# CHARLESTON.

## McClung v. Sieg.

Submitted September 7, 1903—Decided December 16, 1903.

1. ADMINISTRATOR—*Notice—Debt.*

   Where an administator, having no notice of a debt against the estate of his intestate, makes distribution of the estate, and is afterwards compelled to pay the debt, and there is no fraud or improper conduct imputable to him, respecting either creditor or the distributees, he may, in equity, compel the distributees to refund to him the amount of the debt, interest and costs which he has been compelled to pay, and his expenses in the defense of the suit, although he has taken no refunding bond. (p. 472).

2. ANCILLARY ADMINISTRATOR.

   When the principal administrator of an estate has been appointed and resides in another state, and an ancillary administrator has been appointed in this state, and such ancillary administrator has, in ignorance of a debt against the estate of his intestate, turned the assets over to the principal administrator, and the principal administrator has made complete or partial distribution thereof, and the ancillary administrator is compelled to pay such debt out of his own funds, and is not guilty of any fraud or improper conduct, he is entitled to reimbursement by the distributees, and he is not compelled to go

to the foreign jurisdiction to obtain such relief, if any of the distributees have property within this state, sufficient to reimburse him, and he may proceed by foreign attachment against such property, but his recovery against the distributee will be limited to the amount which the distributee has received from the estate. (p. 472).

3. ADMINISTRATOR.

While it is necessary, when all of the distributees are within the jurisdiction of the court in which the administrator is entitled to proceed for such relief, that all of them shall be made parties, to the end that they shall contribute ratably and that it may not be in the power of the administrator to throw the whole liability upon one of them in the first instance, yet, when they are not all within the jurisdiction of the court, he may sue such of them as are within the reach of the court's process, and, if they are all non-residents and any af them have property within reach of such process, it may be subjected by attachment in a suit in equity. (p. 473).

4. ADMINISTRATOR—*Reimbursement.*

The administrator's right to reimbursement is not limited to payment out of the specific money or property received from the estate by the distributee, and any property belonging to the distributee which is liable for his debts generally, may be subjected, but not for a larger amount than he has received from the estate. (p. 476).

5. NON-RESIDENT ADMINISTRATOR.

Where the affidavit for attachment and other papers in the cause show that the defendants are non-residents, and no order of publication has been taken on return day of the process, the plaintiff is entitled to a reasonable time in which to perfect his suit by order of publication, and the suit does not abate immdiately upon the return of the process and failure to take the order of publication. (p. 476).

6. ORDER OF PUBLICATION.

A general appearance by any of the non resident defendants renders an order of publication unnecessary as to such of them as appear. (p. 476).

Appeal from Circuit Court, Pendleton County.

Bill by D. G. McClung, administrator of James M. Sieg, against John S. McNulty and others. Decree for plaintiff, and certain defendants appeal.

*Affirmed.*

FLOURNOY, PRICE & SMITH, for appellants.

B. B. HEINER and REYNOLDS & FORMAN, for appellees.

POFFENBARGER, JUDGE:

This is a suit in equity brought in the circuit court of Pendleton county by D. G. McClung, administrator of James M. Sieg, deceased, whose domicile was in Virginia at the time of his death, against John S. McNulty, the Virginia administrator of said Sieg, as such administrator and in his own right, the widow and heirs at law of said Sieg and S. B. McClung, for the purpose of compelling Frances V. Sieg to refund to the West Virginia administrator out of her distributive share the sum of $1,028.62, the amount of a judgment and cost of defending the suit, for a debt of which the administrator had no notice at the time he made distribution, or, to be more accurate, permitted the Virginia administrator to collect the assets in West Virginia and make the distribution, if, legally speaking, distribution has been made. It is claimed by McClung that the fund which he has attached in the hands of S. B. McClung is a part of the uncollected assets of the estate of his intestate, although the Virginia administrator had, long before the bringing of this suit, turned that fund over to Frances V. Sieg, the widow, as part of her distributive share, and released S. B. McClung, the debtor, and McClung had executed a new note for the amount payable to Frances V. Sieg. So the debt which S. B. McClung owed to James M. Sieg, plaintiff's intestate, remained in the hands of McClung at the time this suit was brought, but was claimed by Frances V. Sieg. Mrs. Sieg had received from the domiciliary administrator in all, $2,551.00 up to February 1, 1895, and there yet remained due her, on account of her distributive share as shown by the record, $873.88 at that time; but, of the amount so received by her, $1,101.00 was the amount in the hands of S. B. McClung, which he did not collect but for which she took his note. McClung owed her, on account of some transaction between them, $100.00 with interest from June 8, 1896. This last sum seems not to have been any part of the estate of James M. Sieg. Mrs. Sieg, McNulty and the heirs of James M. Sieg, being non-residents, an order of publication was taken against them, and Mrs. Sieg appeared and filed her separate demurrer and answer to the bill but there was no ap-

pearance for any of the other parties except S. B. McClung, who filed his answer as garnishee in the attachment proceeding. From his answer and the pleadings and evidence in the case the court found that there was due from him to Frances V. Sieg, the sum of $1,103.17 with interest from the —— day of ——, 1891, subject to a credit of $300.00 as of February 9, 1894; $100.00, December 18, 1894; $300.00, February 2, 1896; $100.00, January 5, 1895; $300.00, February 10, 1896; and that he was also indebted to her in the further sum of $100.00 with interest thereon from June 8, 1896, and, on the 10th day of November, 1899, made a decree requiring S. B. McClung to pay over to D. G. McClung, the plaintiff, the amount due from him to Frances V. Sieg as assets of the estate of James M. Sieg, deceased, subject to the payment of any debts against said estate. It is from said decree that this appeal was taken.

It seems that the facts in reference to the debt paid by D. G. McClung, administrator, after the funds belonging to the estate of his intestate, except those in the hands of S. B. McClung, had, by his consent, been collected and taken out of the state by the Virginia administrator, and the money in S. B. McClung's hands had been turned over to Mrs. Sieg, as part of her distributive share, are such as would entitle the plaintiff, upon proper proceedings in a court of equity with the necessary parties in court, to compel reimbursement by the distributees and heirs, although no refunding bond was taken from them. McClung was appointed as administrator in 1876 and there was a large amount of money in the state of West Virginia due to his intestate which he might have collected, but as it appeared that there were no debts of any consequence due from him, to persons residing in this state, McClung permitted C. P. Jones, who had been the law partner of Mr. Sieg in his life time and who was familiar with his business, to collect, as attorney for plaintiff, nearly $6,000.00 and pay it to McNulty. After this had been done and the McClung debt had been turned over to Mrs. Sieg, a judgment was rendered against D. G. McClung, administrator, in the circuit court of Pocahontas county in June, 1893, for the sum of $712.15 with interest from the 20th day of October, 1892, for a debt due from the estate of his intestate. In April, 1897, a decree was entered in a chancery suit in Pendleton county, requiring said McClung to pay the said judgment, then amounting

to $904.07, out of his own funds. This was satisfied by him on the 5th day of May, 1897, and, with the interest and costs, then amounted to $945.17. In addition to that, he had been compelled to pay out $83.45 in defending these suits, making his total outlay $1,028.62.

The debt which McClung was compelled to pay seems to have been stubbornly contested on his part and there is no evidence of any fraud or improper conduct imputable to him in that connection and the debt did not appear until after the assets had passed out of his hands. Under such circumstances, legatees may be compelled to refund and the same rule is, of course, applicable to distributees of an intestate's estate. *Jones's Exrs.* v. *Williams,* 2 Call. 103; *Burnley* v. *Lambert,* 1 Wash. 312; *Gallegoe* v. *Lambert,* 3 Leigh 465; 1 Tuck. Com. 425; *Robertson* v. *Archer,* 5 Rand. 319, where, although the court refused a decree for refunding because the claim was too old, the principle is admitted and the legatees were compelled to give refunding bonds for the benefit of the executors as to claims of any other creditors that might exist; *Bower* v. *Glendening,* 4 Munf. 219. Here, the court holds that "If without fraud or collusion, a decree be rendered, by a court of competent jurisdiction, against an executor, he may bring his suit in equity against the legatees, for contribution to satisfy such decree." This Court announces the same doctrine in *McEndree's Am'r* v. *Morgan,* 31 W. Va. 521.

But it is seriously contended that, in order to compel reimbursement, the executor or administrator must sue all the distributees or legatees, so that the burden of refunding will fall upon them in proportion to what they have received from the estate; and that the suit cannot be maintained against Mrs. Sieg alone, she being the only one of the distributees who has appeared. The others are all non-residents and if Mrs. Sieg cannot be held in this suit, the administrator will be compelled to go to a foreign jurisdiction to enforce his claim. In Virginia he might be able to make them all defendants in one suit, but he insists that this Court will not compel him to go out of the state for that purpose. It is undoubtedly true that, ordinarily, all the legatees or distributees should be parties. "The creditors have a double remedy; first, against the executors at law, in which case the executors have their remedy in equity, against the legatees, to compel them to refund; or secondly, the creditors

may, in equity, pursue the estate in the hands of the legatees; and in either case, all the legatees must be made parties, that the charge may not fall upon one, but may be equally borne by the whole. But if this direct mode against a particular legatee was permitted, it would put it in the power of the creditor, to mark out the person, in the first instance, to sustain the whole weight." *Burnly* v. *Lambert*, 1 Wash. 313; *Scott* v. *Halliday*, 5 Munf. 103; *Sampson* v. *Bryce*, 5 Munf. 175; *Lewis* v. *Overby's Adm'r*. 31 Grat. 601. But the circumstances of this case are unusual and extraordinary in this, that Mrs. Sieg is the only distributee, (assuming that the legal title to the fund in Mc-Clung's hands was held by her when it was attached) who had any property in this state that could be subjected to the claim of the administrator. But for that circumstance, he would have had no remedy against her here. Had they all been residents of the state of West Virginia, or all had property within the jurisdiction of the court, it would have been the duty of McClung to sue them all and make them contribute ratably to his reimbursement. As it is clear that for want of means to bring any of them except Mrs. Sieg within the jurisdiction of the court, plaintiff can proceed against her only, shall it be said that he is deprived of his remedy against her because jurisdiction of the balance of the distributees cannot be obtained? If that be true and the distributees were domiciled in different states, he could not obtain relief against any of them. Such is not the tendency of the decisions nor the spirit of the law. In *Ryan's Adm'r* v. *McLeod*, 32 Grat. 367, where it was sought to subject real estate in the hands of heirs to the payment of their ancestor's debts, one of them had sold his portion to a *bona fide* purchaser and had become insolvent, and the portions of the other heirs were subjected to the payment of the whole of the debts. The same principle is applied in *Lewis* v. *Overby*, 31 Grat. 601. Although these cases are not exactly in point, they show that where it is impossible to make the heirs contribute ratably, the portion which cannot be collected from one of them because of his insolvency may be charged against the others. The case is analogous to that of a joint demand as to which it is necessary that all the obligors be made parties. In those cases the non-residence of part of them does not preclude judgment as to such of them as can be legally served with process. Nor is it any objection to

proceeding by attachment as to any of them who may happen to have property within the jurisdiction of the court. "Where, in an action or suit against two or more defendants, the process is served upon part of them, the plaintiff may proceed to judgment as to any so served, and either discontinue it as to the others, or from time to time, as the process is served as to such others, proceed to judgment as to them until judgments be obtained against all." Code, chapter 125, section 52. If Mrs. Sieg is compelled to pay the whole of this judgment, she will be entitled to contribution from the other distributees of the estate. "Legatees are liable to refund even at the suit of other legatees in some cases. As where the assets were originally deficient, and all are bound to abate in proportion; there if the executor pays one in preference to the rest, they may exhibit their bill and compel him to refund." Tuck. Com. 425; Toll. 341. "In all cases legatees are liable to refund at the suit of creditors, if there is a deficiency of assets." Tuck. Com. 425. The same principle that makes it necessary to make all the distributees parties, where the administrator is entitled to be reimbursed, and all can be made parties, entitles one legatee who is compelled to refund the whole amount to the personal representative, to have contribution from all the others. Manifestly, it is a hardship upon Mrs. Sieg to compel her to refund the whole of this debt to the administrator. But as she may compel the other distributees to contribute and relieve her of all of it except what she is equitably bound to pay, it would be a much greater hardship upon the administrator to deny him relief, for, in that event, he has no remedy. Although it is claimed that he should have gone to the State of Virginia to have instituted this suit where he could have brought all the distributees in to answer his bill, that contention is not in conformity with the principles of law. Where a plaintiff may resort to either of two different forums in the same jurisdiction, the one to which he does go will not turn him away simply because he may obtain relief elsewhere. This being true, it will be difficult to find a satisfactory reason for the refusal of a court, having power and authority to give relief, to entertain the plaintiff's bill on the ground that he may obtain relief in a foreign jurisdiction. No precedent for such action has been cited or found.

These views are strengthened by the following legal proposi-

tions: "Each independent sovereignty considers itself competent to confer, whenever there is occasion, a probate authority, whether by letters testamentary or of administration, which shall operate exclusively and universally within its own sovereign jurisdiction, there being property of the deceased person, or lawful debts owing, within reach of its own mandate and judicial process." Schouler's Ex. & Adm'r. section 165. One of the main purposes of the appointment of an ancillary administrator is the subjection of the assets of the decedent to the payment of his debts due the citizens of the local sovereignty. "In practice, the local sovereignty, state or national, permits letters to issue. upon the estates of deceased non-residents, mainly for the purpose of conveniently subjecting such assets to the claims of credi tors entitled to sue in the local courts, and for appropriating whatever balance may remain to the state or sovereign, by way of distribution, in default of known legatees or kindred." _Id._ section 166. While, by comity, the courts of the jurisdiction in which the property is found will recognize the rights of non-resident legatees and heirs, and will permit any surplus, after paying the local indebtedness, to be paid over to the domiciliary administrator or executor, it is only done in a spirit of comity and as a matter of judicial discretion. The local sovereignty may compel them to come into its own jurisdiction to receive what belongs to them. "The rule to thus pay over is not, however, absolute; on the contrary, the transfer will not be made if deemed, under the circumstances, improper; and legislative policy is to secure the rights of its creditors and citizens at all hazards. * * * * * For the spirit of comity does not require that citizens shall be put to the inconvenience and expense of proving and collecting their claims abroad when there are assets at hand." _Id._ section 174. Another matter worthy of consideration in this connection is, that the West Virginia administrator could not, as such, sue in the courts of Virginia, if at all, without making settlement there of his administration accounts, and it may be doubted whether he could sue at all in Virginia, where there is another administrator of the same intestate, except as a creditor. If not actual obstacles, there are inconveniences, standing in the way of this plaintiff, if he should be turned out of the courts of this state and compelled to go to Virginia to enforce reimbursement.

Another contention is that the fund in the hands of S. B. McClung cannot be treated as assets of the estate of plaintiff's intestate because it has been turned over to Mrs. Sieg. If it were uncollected and unadministered assets, there is no ground upon which this suit could be resisted. But it is claimed that it has been collected with the consent of the plaintiff by the Virginia administrator and distributed by him, and that, in consequence thereof, the West Virginia administrator, not having paid it to Mrs. Sieg, cannot be reimbursed out of that fund. Under the principles of law governing the relations of ancillary and domiciliary administrators, the collection and distribution of the West Virginia assets by the Virginia administrator, with the consent of the West Virginia administrator, is equivelant to such collection and distribution by the West Virginia administrator. The Virginia administrator could make no collections here except with the consent of McClung. Schouler's Ex. & Adm'r. section 173.

But it is contended further that the greater part of the money in the hands of S. B. McClung and claimed by Mrs. Sieg never was the property of plaintiff's intestate but that it belonged to Mrs. Sieg herself. She is the sister of S. B. McClung and, on the partition of the real estate of their father in 1867, there became due to her from her brother, $250.00 as owelty of partition. Her husband loaned McClung some additional money and took his note payable to himself for his own money and the money due his wife. The $100.00 hereinbefore mentioned is money that Mrs. Sieg loaned her brother, S. B. McClung. Granting, for the purpose of discussion, that all this money belonged to Mrs. Sieg and never was a part of the assets of James M. Sieg, it is liable to be subjected to the payment of plaintiff's claim. Her liability to refund is contractual in its nature and not only the specific fund or property which she received for her distributive share, but any other property belonging to her and found in the state of West Virginia, which, by its nature, may be subjected to the payment of her debts generally, is liable. The only limitation is, that she shall not be compelled to pay' back more than she has received from the estate. There is no possibility of her being compelled to do that in this case for the reason that she does not deny having received from the estate $2,551.00, while the plaintiff here only claims $1,028.62. There

is certainly no rule which limits the recovery so as to make it payable only out of these specific funds or property received by the distributee. No authority for any such limitation is offered.

Upon the authority of *Steele* v. *Harkness,* 9 W. Va. 13, it is claimed that the suit had abated and the court lost jurisdiction because an order of publication was not taken upon return of the process but was subsequently taken. The case of *Steele* v. *Harkness* does not apply here, for the reason that it does appear here, as it did not appear there, by affidavit, that the defendants, except S. B. McClung, were non-residents. At any rate, the case of *Brown* v. *Gorsuch,* decided at the last term of this Court, settles this question, for it is there held that, in such case, the plaintiff shall have a reasonable time in which to perfect his proceedings by order of publication. Moreover, this record shows that the original summons was returnable on the first Monday in June, 1897, and that a copy of it was delivered to a member of Mrs. Sieg's family on the 20th day of May, 1897. But that service was probably not good for the reason that the return does not show in what county the service was made. On the 8th day of June, 1897, which was the return day of the first summons, a second summons was sued out and a copy of that was, on the 12th day of June, 1897, delivered to Mrs. Sieg at her residence in Highland county, Virginia. This was equivalent to an order of publication. At some time in the year 1898, Mrs. Sieg appeared and filed her demurrer for it appears that on the 20th day of June, 1898, the demurrer was overruled. In the printed record there is a paper called a separate demurrer and answer of Mrs. Sieg but there is no order filing her answer. Her appearance gives the court jurisdiction as to her. *Lumber Co.* v. *Lance,* decided at this term. But, in overruling the demurrer the court referred the case to a commissioner without giving a day to answer. This is assigned as error. According to *Neely* v. *Jones,* 16 W. Va. 625; *Goff* v. *McBee,* 47 W. Va. 153, it was error. But it cannot possibly be prejudicial for that order was interlocutory, and did not affect the merits, and Mrs. Sieg had more than a year after that in which to file her answer before final decree In the two cases referred to, final decree was made immediately upon filing the answers This case, in respect to that order of reference and the answer, is like the case of *Foley* v. *Ruley,* 43 W. Va. 513, where it is held that a mere or-

der of reference, deciding nothing, may be made without answer. Manifestly, it was not the duty of the plaintiff to compel Mrs. Sieg to answer, and while the Court made no order giving her time, the record shows that she did have more than a year after her appearance in which to file her answer. Hence, she cannot complain of her own failure to answer.

The decree of the 10th day of November, 1899, requiring S. B. McClung to pay over the money to D. G. McClung, administrator, was erroneous, for the reason that at that time the court had not judicially determined how much the plaintiff was entitled to require Mrs. Sieg to refund. It was not a suit to recover unadministered assets, but one to compel reimbursement, and she could not be required to pay over to him more than was necessary to reimburse him. By that decree, the report of the commissioner, formerly made in the cause, was recommitted without confirmation. However, on the 9th day of April, 1900, after the commissioner had again reported, the court confirmed his report and found that after applying, on the claim of the plaintiff, all of the money which had been paid to him by S. B. McClung under the former decree there yet remained due him and unpaid $421.98. The appeal and *supersedeas* were not obtained until the 9th day of April, 1900. Thus, before the erroneous decree was appealed from, the court had determined the amount to which the plaintiff was entitled and applied the fund in controversy to its satisfaction. Hence, the error in the decree of November 10, 1899, was substantially corrected by another decree before the appeal was taken. At any rate, it is made certain by said subsequent decree that the error in the former one was not prejudicial. To warrant a reversal, the error complained of must be prejudicial. *Clark* v. *Johnson,* 15 W. Va. 804.

There being no error in the decree, it is to be affirmed.

UPON RE-HEARING.

(Dec. 16, 1903).

This case was decided and the foregoing opinion filed on March 22, 1902. A rehearing was allowed on petition of appellant, because of a doubt as to whether she ought to be held for more than a ratable proportion of the debt, to be determined by the ratio which the amount received by her from the estate bears to the whole amount distributed. This question was extensively

discussed on the re-argument and a number of cases cited in support of the contentions of the parties, respectively, but no case expressly deciding the point has been produced. *Clark* v. *Williams,* 70 N. C. 679, seems to support, to some extent, the argument of counsel for appellant, and will be noticed later on. It is everywhere held that a suit for re-imbursement by the personal representative, or by a creditor against the distributees, for the payment of his debt, must be in equity, and that all the distributees must be made parties, and that the decree should be against each distributee for his ratable proportion of the debt. From this it is argued that such ratable proportion is the limit of the liability of each distributee, and that he cannot be held for more. An equally strong argument, based upon the same premise, might be made for the contrary of the proposition. If the liability is not joint but several, each distributee being required to pay no more, in any event, than such share, why the necessity for suing all? Upon a joint and several contract, the parties to it may be sued jointly, or each may be sued separately. Where the undertaking is joint, they must all be sued together and the decree is against them all for the whole amount, and, if necessary, one of them may be required to pay the entire amount. If the liability of the distributee is limited to a ratable proportion of the debt, why may he not be sued separately? Why the necessity for suing all together? To this it may be answered that a settlement of the administration account, and proof of the debt against the personal representative, are pre-requisites to a decree. This is true, but it is not the reason assigned by the courts; for they say all the distributees must be made parties, in order to prevent the burden of the whole debt from falling upon one, or such of them as the creditor may elect to proceed against. This is forbidden because it is inequitable, and it does not indicate the limitation of liability contended for. On the contrary, when the courts say all the distributees and legatees shall be made parties, in order to prevent the creditor from requiring the payment of an undue amount from one of the parties, they indicate that there is no limit of liability, short of the amount received, except the equitable principle of contribution, which here concerns the remedy more than the right. They treat the amount received by the distributees as a fund belonging to the estate and liable to the payment of the debt, and the dis-

tributees are brought in as the joint holders of that fund, or as being liable for the payment of the debt, by reason of their having received from the estate money or property which ought to have been applied to the payment of the debt. Then the court, having them all before it, in order to settle and determine the rights of all the parties by a single decree, ascertains how much each should pay, to the end that the equities between the distributees themselves may be adjusted and settled, as well as the equity between the creditor or personal representative on the one side, and all the distributees, on the other. It makes two settlements by a single decree and ends all controversies.

This principle is adverted to by Judge Staples in *Ryan's Admr.* v. *McLeod*, 32 Grat. 367, 374. He says: "Our attention has been called, however, to an opinion of Judge Tucker, found on page 113, 2d volume, of his commentaries, in which he states 'there is much reason and some authority for the doctrine that each heir should be held responsible only for his portion of the debts.' And he cites as authority the cases of *Mason's Devisees* v. *Peter's Admr.* 1 Munf. 437; *Foster and wife et als.* v. *Crenshaw's ex'ors*, 3 Munf. 514; *Hopkirk* v. *Dennis et als.*, 2 Munf. 326. It will be found, upon examination, the first two cases only decide that the lands of all the devisees should bear their ratable proportion of the debts, in the first instance, instead of decreeing against one, and turning him around upon the others for contribution—a principle universally conceded and repeatedly acted upon by this Court. The last case—that of *Hopkirk* v. *Dennis*—holds the very reverse of what Judge Tucker supposes. There it was conceded that one of the devisees had wasted his portion of the estate, and was insolvent. The court held that the chancery court erred in not decreeing that the other devisees should pay the insolvent devisee's portion; in due and ratable proportions, to the extent of the lands devised."

The case just quoted from was cited in the former opinion as affirming the proposition decided in *Hopkirk* v. *Dennis*. Some other, cases were there cited to the same effect, and it is argued that they do not apply because the proceedings were against the heirs in respect to real estate descended and devised, instead of legatees and distributees to whom the personal estate had been paid over, leaving debts unpaid. And it is said that each heir is

liable for the whole amount because the statute expressly makes him liable. But it is to be noted here that, notwithstanding the liability of each heir to the extent of the value of the land which descended, or was devised, to him, all the heirs must be made parties, so that the principle of contribution may be enforced and applied in such suit, and the liability placed where the court can see that it ultimately belongs, so that the rights of all the parties may be settled once for all, and not by piece-meal. As some of the judges say, a court of equity always puts the saddle on the right horse in the first instance. This illustration shows that there is nothing in the argument of limited liability, founded upon the requirement that all the distributees shall be made parties and contribute ratably to the payment of the debt. It is true that, at common law, the real estate of a decedent was liable in the hands of heirs for record and specialty debts only, and that the statute now makes the real estate liable for all debts. It makes it assets for the payment of debts, in case of a deficiency of personal property. The effect is merely to place real estate on the same footing as personal property respecting the debts of the decedent, after the personal estate has been exhausted, and proceedings to enforce payment of a debt out of real estate in the hands of the heirs are conducted upon the same principle as that which governs the enforcement of payment out of the personal property in the hands of legatees or distributees.

Another argument is based upon the statute authorizing personal representatives to require the execution, by distributees and legatees, of bonds with security, conditioned to refund due proportions of any debts or demands which may afterwards appear against the decedent and of the costs attending their recovery. Adopting the same line of argument, the court, in *Clark* v. *Williams*, 70 N. C. 679, reaches the conclusion that, where refunding bonds have not been taken and one distributee has become insolvent, the others are not required to make up his portion of the debt. This is exactly the opposite of what the Virginia court holds, respecting real estate in the hands of the heirs. The reason assigned for the decision is faulty. What is the effect of this statute when the personal representative puts it in force? It lays upon each distributee the same burden that a court of equity would ultimately put upon him, and makes him give security

for the payment of the amount. It goes to the end of any possible future assertion of a demand against the distributees by suit in equity, and requires each one to give bond with security to do that which a decree, settling the rights of all parties in respect to any outstanding and unpaid debts against the estate, would require him to do. It, in no way, indicates or determines the nature or extent of the primary liability of a distributee or his liability when no bond has been given. As a bond with security is exacted by this statute, the case stands upon an entirely different footing. The statute does not limit the liability without requiring bond with security. This argues, if anything, that, in the absence of security for his due proportion of the debt, the liability of the distributee would be greater, otherwise the outstanding debts might not be paid. It would not be, in case of the subsequent insolvency of any one or more of the distributees, if each is only liable ratably. Security by each for the payment of his share is a provision against such contingency.

The view adopted by this Court seems to be supported by authorities as well as reason. In *Sanders* v. *Godley,* 23 Ala. 479, the court said: "The chancellor will render a decree in favor of complainant against the respective parties for their several portions as aforesaid, and allow them some short delay for the payment of the same, *and shall further decree that if the whole amount be not paid by such time execution may issue against any or either of said parties defendants, to the extent of the property respectively received by them, until the whole is paid.*" The Virginia court makes no distinction between the legatees and heirs in respect to the payment of the debt of a decedent. "Where legatees are called upon to refund at the suit of a creditor, the general principle is that all must be before the court and the burden apportioned among them, if it can be done, without material delay or injury to the creditor. But if some of the legatees are insolvent, the others will be required to make good the deficiency to the extent of what they have received." *Leake's Ex'or.* v. *Leake et als.,* 75 Va. 792, (pt. 9 syllabus). The South Carolina court clearly affirms the same principle. *Lanier* v. *Griffin,* 11 S. C. 565, holds: "The demand of a creditor of testator against the legatee, who has received his legacy, leaving a debt of the testator unpaid without available assets for its payment, is, in equity, in the nature of an action for money had

and received.* * * * *  *Held further*, that the legatees and devisees were liable to the ward to the extent of assets received, but that no personal liability attached to the executors.  *Held further*, that the legacies were liable to respond before the lands specially devised could be applied, and that the decree should have established the liability of all the legatees and devisees *inter sese* to contribution."

The authorities fully sustain the proposition that the liability of the distributees rests upon the theory of assets of the decedent's estate in their hands as a trust fund.  That being true, each one is primarily liable to the extent of the amount of the fund held by him.  "That a creditor may follow assets in the hands of the legatees to whom they have been delivered in ignorance of the creditor's demand, has been an established principle of this Court from the earliest period, of the decisions in which we have any traces."  Lord Cottenham, in *March* v. *Russell*, 3 Myl. & Cr. 31.  "If a creditor does not come in till after the executor has paid away the residue, he is not without remedy, though he is barred the benefit of that decree.  If he has a mind to sue the legatees *to bring back the fund* he may do so."  Lord Eldon, in *Gillispie* v. *Alexander*, 3 Russ. 136.  "But the legatees and distributees, although there was an original deficiency of assets, are not at law suable by the creditor.  Yet he has a clear right in equity, in such a case, to follow the assets of the testator into their hands as a trust fund for the payment of his debt.  The legatees and distributees are in equity treated as trustees for this purpose; for they are not entitled to anything except the surplus of the assets after all the debts are paid.  Besides, they, in the case put, being ultimately responsible to pay the debt to the executor out of such assets, if the executor should be compelled to pay it to the creditor by a suit at law, may be made immediately liable to the creditor in equity."  Story's Eq. Jur. section 1251.  "In the course of the administration of estates, executors and administrators often pay debts and legacies upon the entire confidence that the assets are sufficient for all purposes.  It may turn out, from unexpected occurrences, or from debts and claims made known at a subsequent time, that there is a deficiency of assets.  Under such circumstances they may be entitled to no relief at law.  But in a court of equity, if they have acted with good faith and with due caution, they will

be clearly entitled to it upon the ground that otherwise they will be innocently subject to an unjust loss from what the law itself deems an accident." *Id.* section 90.

It is urged that, conceding the jurisdiction and power of the courts of this state to subject, to the payment of this debt, the fund received by Mrs. Sieg, it ought not to be done, because it is inequitable, and the plaintiff ought to be required to go into another jurisdiction in which the remedy is more complete. This phase of the case has been discussed in the former opinion. It is true, that, in *Dickinson* v. *Hoomes,* 8 Grat. 353, 416, Judge Moncure says: "But cases may sometimes occur in which, all things considered, it may be more convenient to turn over the parties to a foreign jurisdiction," but the plaintiff here is proceeding in the courts of the state in which he was appointed administrator and the process of whose courts was used for the collection of the assets which formed the trust fund for the payment of this debt. In this state, his accounts are to be settled according to the law of this state. To turn him around to a foreign jurisdiction may be as inconvenient and as inequitable as to require this distributee to pay the debt here. Even in *Dickinson* v. *H'oomes,* heirs residing in Virginia were made to account for the value of lands in the state of Kentucky, which had descended to them.

We do not believe there is anything in this case which, on equitable principles, requires the courts to decline to take jurisdiction of it. Hence, the decree should be affirmed.

*Affirmed.*