JULIA HENDERSON, *Appellant,* vs. FIRST TRUST & SAVINGS BANK, a Florida corporation, as Executor of the Estate of PARKER A. HENDERSON, deceased, *Appellee.*

144 So. 415.

Opinion filed November 14, 1932.

Petition for rehearing denied December 3, 1932.

*Will H. Price, Marshall F. Sanders* and *John M. Murrell,* for Appellant;

*Loftin, Stokes & Calkins,* for Appellee.

DAVIS, J.—In this case there is an appeal to this Court from an order of the Circuit Court of Dade County overruling a general demurrer to a bill of complaint and denying a motion to dissolve a temporary restraining order entered against the appellant, as well as an order also overruling a special demurrer filed to the bill by the defendant below questioning its sufficiency as to particular portions.

The First Trust & Savings Bank, of Florida, the appellee, was appointed and qualified as executor of the estate of one Parker S. Henderson, who died July 26, 1925. Parker Henderson's will bequeathed to Mrs. Henderson, the appellant, two hundred and eight shares of the stock of the First National Bank of Miami.

On March 18, 1926, the executor transferred and de-

livered these shares of stock to the legatee without taking from her any bond and security as it was permitted to do under Section 5606 C. G. L., 3724 R. G. S., unless the certain paper in writing signed by Mrs. Henderson, and referred to in the record, be regarded as such "security" within the purview of the section last mentioned.

At the time it paid this stock legacy to Mrs. Parker Henderson, the executor of the bank regarded the remaining assets of the Parker Henderson estate as being sufficient to pay all of the estate debts, and for the purposes of this appeal, the executor must be regarded as having acted in good faith and with due diligence in delivering the aforesaid stock legacy to appellant.

Certain legal proceedings appear to have been had by parties interested in the Henderson estate, including Mrs. Henderson. As a result of such proceedings the estate was arrested in its ultimate administration and distribution until the time this court reversed certain orders of the Circuit Court by which the estate had been taken into receivership and held in that status for a long period of time. During this time, so the executor's bill alleges, the value of the assets depreciated, and that to such extent, that when the property was ultimately turned back to the First Trust & Savings Bank, not enough of the assets remained to pay all of the estate's debts. See First Trust & Savings Bank v. Henderson, 101 Fla. 1437, 136 Sou. Rep. 370, for the former proceedings just referred to.

The ultimate result was that in August, 1931, the executor, First Trust & Savings Bank, brought this suit in equity for the benefit of itself as executor and as representative of the creditors of the Henderson estate, and in and by its bill set up the fact that the assets of the Parker Henderson estate, without the 208 shares of bank stock which had been delivered to Mrs. Henderson, would not be sufficient to pay all debts and claims against it, and that the executor had

not, by the exercise of due diligence on its part, by reason of the litigation to which the estate had been subjected, been able to discover the deficiency in assets until shortly before it brought its bill.

The prayer of the bill is that Mrs. Henderson as legatee may be required to return to the executor bank for the benefit of the creditors of the Parker Henderson estate, the two hundred and eight shares of stock that had been delivered to her by the executor in the belief that they would not be needed for such purposes. In addition thereto, it is further prayed that Mrs. Henderson should also be required to return to the executor bank, on payment of the amount of her investment therein, two hundred and eight additional shares of stock which it alleges Mrs. Henderson had become enabled to purchase with her own funds, by reason of her being the owner of the two hundred and eight shares derived from the executor's transfer of same to her, as aforesaid.

Temporary injunction was prayed and issued to preclude the transfer of any of the stock or the collection of any of the dividends thereon *pendente lite.*

The rule is well settled that where an executor, acting in good faith, and with due care and diligence, honestly believing the remaining assets of an estate to be sufficient to pay the debts due by it, pays a legatee or distributee, and it is afterward discovered that there is a deficiency of assets to pay claims and such deficiency was caused by no fault on the executor's part, equity will usually give relief and compel the legatee or distributee to refund his pro rata share of the deficiency in proportion to the amount that he has received. Clifton v. Clifton, 54 Fla. 535, 67 Sou. Rep. 67; 1 Story's Equity Jur. 14th Ed. Section 131. See also McClung v. Sieg, 54 Va. 467, 46 S. E. 210, 66 L. R. A. 884.*

*This case holds that legatee is not liable for any amount greater than what he has received from the estate.

The bill of complaint in this case to which a general demurrer was overruled was sufficient to make a case in equity for some relief, within the purview of the above stated rule. Therefore there was no error committed in overruling the general demurrer to the bill, conceding for the sake of argument, but not deciding at this time, the proposition argued to the effect that there was an agreement in writing given by the legatee to the executor when she received the stock, which may have converted the executor's right of action into one solely at law on this agreement. If such was the case, the details of that transaction should be set up as matter of defense, because it does not clearly appear from the face of the bill of complaint that the executor's ordinary right to proceed in equity with respect to a specific asset of the Henderson estate has been lost.

The bill having made out a *prima facie* case for recapture of the stock delivered over by the executor to the legatee, and there being equity in the bill, the court as a matter of course was authorized to enjoin its transfer, *pendente lite,* whether the defendant was solvent or not. This is true because the right sought to be enforced by the executor was a *recapture* of the exact asset it had delivered over,—a right which it had the option to pursue in the absence of some demonstrated bar to such relief on equitable principles.

A specific legacy is an asset of, and in equity is subject to being recaptured for, the benefit of an estate, until the debts are settled. As between the executor and the legatee, this recapture can be had in equity, unless the executor has by some express or implied agreement or other circumstance effectively released his equitable right to follow and reclaim what he has paid out or delivered over. Harris v. White, 5 N. J. L. 485; Jervis v. Wolferstan, 18 L. R. Eq. Cases 18; Smith v. Smith, 76 Ind. 236.

Where transfer of stock is sought to be enjoined by one such as an executor claiming a right to recover it specifically, it is the duty of the Court, without necessarily arriving at or expressing an opinion on the merits of the claim, to preserve the property in litigation until the case can be disposed of on final hearing, when it appears that to do otherwise would be calculated to hinder and embarrass, if not defeat, the complainant in his efforts to recover the specific shares, through the possible creation of new equities on the part of those purchasing such stock directly or indirectly from the defendant in good faith and for full consideration if the injunction were denied. Osborn v. Bank of the United States, 9 Wheat. 738, 6 L. Ed. 204; Hoy v. Altoona Midway Oil Co., 136 Fed. 483.

Paragraph 3 of the bill of complaint alleges:

"Together with said 208 shares, your orator transferred to the defendant a right, which was incident to the ownership of said stock, to purchase an additional 208 shares of the stock of the First National Bank of Miami, Florida; and the defendant exercised said right and purchased said additional 208 shares, and has received from said The First National Bank stock certificates numbered 922, 923, 924, 925 and 926 therefor and has also received from said The First National Bank as dividends on the aggregate number of 416 shares more than $17.000."

The injunction order appealed from enjoins Mrs. Henderson not only with respect to transferring or disposing of the specific asset, that is the specific 208 shares of stock, delivered to her by the executor as her legacy from her husband's estate, but also enjoins her from disposing of the additional 208 shares which Mrs. Henderson purchased with her own money, and which were never in any respect a part of, the assets of the Henderson estate, directly or indirectly.

Accepting the allegations of the complainant's own bill on this point as true, it appears conclusively therefrom

that the First Trust & Savings Bank as executor had no legal or equitable right to, nor claim on, the 208 additional shares of stock purchased by Mrs. Henderson with her own resources and which were admittedly hers in her own right, even though her ownership of that stock was derived by purchase under a privilege to do so which attached to the 208 shares comprising her legacy. See Real Estate Trust Co. v. Bird, 90 Md. 229, 44 Atl. 1048.* Neither does it appear that the executor has any legal or equitable claim on the past due or already paid dividends which accrued to the credit of Mrs. Henderson on any of the stock prior to the time demand was made for its return to the executor. This is necessarily so because no right accrued to the executor until after its demand for recapture of that which was otherwise Mrs. Henderson's individual property.

To the extent that the injunction granted deals with this additional stock, and the accrued dividends which had become the right of Mrs. Henderson to receive prior to the demand of the executor upon her notifying her to return the stock, by reason of its having been found to be needed to be recaptured to pay debts, it was in error and should be modified to such extent that the said additional stock, and the accrued dividends mentioned, will be released from the effect thereof.

The special demurrers to the bill were properly overruled, because the matters attempted to be argued thereunder are matters which should be set up in an answer interposed to negative the general equity prima facie asserted by the bill as drawn.

It follows from what we have said that the order overruling the general and special demurrers to the bill must be affirmed, and that the order granting the interlocutory injunction must be affirmed in part and reversed in part,

*In this case it was held that the *pro tempore* holder of the stock and he alone was entitled to purchase the increase.

in the particulars hereinbefore mentioned. The cause must therefore be remanded with directions to modify the injunction order so as to conform to this opinion, and to have such other and further proceedings in the cause as may be conformable to equity and the course of Chancery procedure.

Orders overruling general and special demurrers affirmed. Injunction order reversed in part and ordered to be modified. Cause remanded for further proceedings according to equity. Constitutional writ issued by Supreme Court ordered to stand discontinued from the date of the filing of mandate in Court below.

BUFORD, C.J. AND WHITFIELD, ELLIS, TERRELL AND BROWN, J.J., concur.